ERIN F. NORRIS (SBN 325090) ) (*admissions forthcoming*)
CARLOS BACIO (SBN 328466)
JEMUEL S. GASCON (SBN 339241)
DENTONS US LLP
601 South Figueroa Street, Suite 2500
Los Angeles, California 90017-5704
Telephone: (213) 623-9300
Facsimile: (213) 623-9924
erin.norris@dentons.com
carlos.bacio@dentons.com
jemuel.gascon@dentons.com

Attorneys for Defendant
THE LAGUNITAS BREWING COMPANY

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

NICHOLAS ONDARO, individually, and on behalf of all others similarly situated,

*Plaintiff*,

v.

THE LAGUNITAS BREWING COMPANY, a California corporation; and DOES 1 through 50, inclusive,

*Defendants*.

Case No.

**NOTICE OF REMOVAL OF A CIVIL ACTION**

TO THE CLERK OF THE U.S. DISTRICT COURT FOR THE NORTHERN DISTRICT OF CALIFORNIA, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that Defendant The Lagunitas Brewing Company (“Lagunitas”) removed the above-entitled action to this Court from the Superior Court of the State of California, County of Sonoma pursuant to 28 U.S.C. § 1441. Lagunitas invokes this Court’s original jurisdiction under 28 U.S.C. § 1332(d) (Class Action Fairness Act [“CAFA”]). Lagunitas submits this Notice of Removal without waiving any defenses to the claims asserted by Plaintiff Nicholas Ondaro against

Defendant Lagunitas and without conceding that Ondaro has pleaded any claims upon which relief can be granted. This removal is based on the following grounds:

## I. Procedural Background

On September 29, 2025, Ondaro filed a Class Action Complaint against Lagunitas in the Superior Court of the State of California for the County of Sonoma, captioned *Nicholas Ondaro v. The Lagunitas Brewing Company, and Does 1 through 50, inclusive*, under Case No. 25CV06756 (the "State Court Action"), which sets forth the following nine of causes of action: (1) failure to pay minimum and straight time wages; (2) failure to pay overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; (8) failure to produce requested employment records; and (9) unfair business practices. A true and correct copies of the Complaint, the Summons, and Civil Cover Sheet are attached as **Exhibit A**.

On October 11, 2025, the Court assigned the case to Judge Patrick Broderick and scheduled a case management conference for March 24, 2026 at 3:00 p.m. A document could not be obtained or does not exist as to these notices; the information was obtained from the Sonoma County Court Docket. A print out of the online Sonoma County Court Docket as of November 24, 2025, is attached as **Exhibit B.**

On October 20, 2025, Ondaro filed a Proof of Service attesting to substituted service. A true and correct copy of the Proof of Service is attached as **Exhibit C**. Lagunitas's response to the Complaint is not yet due, and Lagunitas has not yet responded to the Complaint at the time of this removal.

Exhibits A-C constitute all of the pleadings that have been retrieved in this action as of the date of the filing of this Notice of Removal.

## II. Removal Is Timely

Ondaro purportedly effected substituted service on an individual at Lagunitas's registered agent's office on October 14, 2025, and mailed the Summons,

Civil Cover Sheet, and Complaint on October 15, 2025 to the registered agent. (*See* Ex. C, Proof of Service.) The latter mailing of the complaint and associated papers constitutes substituted service on a corporate entity. *See Bishil v. LBF Travel Inc.*, No. 2:22-cv-06059-MEMF-ASx, 2022 WL 17252186, at *3 (C.D. Cal. Nov. 28, 2022); Cal. Civ. Proc. Code §§ 415.20(a), 415.95.

Under California law, substituted service is deemed complete on the 10th day after mailing—here, October 25, 2025—so the 30-day removal clock began no earlier than that date. *See* Cal. Civ. Proc. Code § 415.20(a); *Ewing v. Integrity Cap. Sols., Inc.*, No. 16-cv-1469-JLS-MDD, 2017 WL 744517, at *4 (S.D. Cal. Feb. 27, 2017). Counting 30 days from completion of service establishes a removal deadline of November 24, 2025. *See* 28 U.S.C. § 1446(b)(1); *see also* 28 U.S.C. § 1453. Consistent with *Murphy Bros. v. Michetti Pipe Stringing, Inc.*, the removal period is triggered by proper service, not by earlier receipt of courtesy copies. 526 U.S. 344, 354 (1999).

Accordingly, Lagunitas time files this Notice of Removal within the statutory period under 28 U.S.C. §§ 1446(b) and 1453. No previous notice of removal has been filed in this Court.

## III. Notice

Lagunitas will promptly serve this Notice of Removal on all parties and promptly file a copy of this Notice of Removal with the Clerk of the Superior Court, County of Sonoma, as required by 28 U.S.C. § 1446(d).

## IV. Ondaro's Allegations

Ondaro's Complaint alleges a putative class of "[a]ll persons who worked for any Defendant in California as an hourly-paid or non-exempt employee at any time during the period beginning four years before the filing of the initial complaint in this action and ending when notice to the Class is sent." (Compl. ¶ 25.)

Ondaro alleges nine causes of action on behalf of himself and the putative class members: (1) failure to pay minimum and straight time wages; (2) failure to pay

overtime wages; (3) failure to provide meal periods; (4) failure to authorize and permit rest periods; (5) failure to timely pay final wages at termination; (6) failure to provide accurate itemized wage statements; (7) failure to indemnify employees for expenditures; (8) failure to produce requested employment records; and (9) unfair business practices. (Compl. ¶¶ 32-104.) Specifically, Ondaro claims Lagunitas violated the California Labor Code and engaged in unfair business practices "stemming from [its] failure to pay for all hours worked (minimum, straight time, and overtime wages), failure to provide meal periods, failure to authorize and permit rest periods, failure to timely pay final wages, failure to furnish accurate wage statements, failure to indemnify employees for expenditures, and failure to produce requested employment records." (*Id.* ¶ 1.)

## V. This Court has Original Subject Matter Jurisdiction Under CAFA

Ondaro brings this action as a putative class action. (Compl. ¶ 23.) Removal under the Class Action Fairness Act ("CAFA") is proper pursuant to 28 U.S.C. §§ 1332(d), 1441, 1446, and 1453 because (1) the amount in controversy by the Complaint exceeds, in the aggregate, $5,000,000, exclusive of interest and costs; (2) the aggregate number of putative class members in the proposed class exceeds 100 putative class members; and (3) diversity of citizenship exists between at least one putative class member and the named Defendant in this matter. 28 U.S.C. §§ 1332(d)(2), 1332(d)(5)(B), 1453; *United Steel, Paper & Forestry, Rubber, Mfg., Energy, Allied Indus. & Serv. Workers Int'l Union, AFL-CIO, CLC v. Shell Oil Co.*, 602 F.3d 1087, 1089–90, 1090 n.2 (9th Cir. 2010). Although Lagunitas denies Ondaro's factual allegations and denies that Ondaro or the class he purports to represent are entitled to the relief requested, all requirements for jurisdiction under CAFA have been met in this case.

### A. The Putative Class Has More than 100 Members

To remove under CAFA, the aggregate number of putative class members in all proposed classes must be greater than 100. 28 U.S.C. § 1332(d)(5)(B); *United*

*Steel*, 602 F.3d at 1090 n.2.

The proposed class period is four years preceding the Complaint's filing on September 29, 2025 (*i.e.*, beginning on September 29, 2021), up until the time that notice of the class action is provided to the class. (Compl. ¶ 25.) As of this filing, Lagunitas employed approximately 344 non-exempt employees in California during the proposed class period. (Declaration of Jocelyn Poon ("Poon Decl.") ¶ 2.)

**B. Minimal Diversity of Citizenship Exists**

To satisfy CAFA's diversity requirement, a party seeking removal need only show that minimal diversity exists—that is, one putative class member is a citizen of a state different from any defendant. 28 U.S.C. § 1332(d)(2)(A) (under CAFA's minimal diversity requirements, diversity exists where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *United Steel*, 602 F.3d at 1090–91 (holding that to achieve its purposes, CAFA provides expanded original diversity jurisdiction for class actions meeting the minimal diversity requirement set forth in 28 U.S.C. § 1332(d)(2)).

For diversity purposes, a corporation is deemed to be a citizen of any state under whose laws the corporation is incorporated and of the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). Lagunitas is incorporated under the laws of the state of California. (Compl. ¶ 9; Poon Decl. ¶ 3.) Lagunitas's headquarters and principal place of business is in Petaluma, California. (Poon Decl. ¶ 4.) Therefore, Lagunitas is a citizen of the State of California.

It is not necessary for DOES 1 through 50 to join in this removal as they have been sued under fictitious names, have not been served or received the Summons or the Complaint, and, under 28 U.S.C. § 1441(b)(1), are disregarded for purposes of removal.

"An individual is a citizen of the state in which he is domiciled. . . ." *Boon v. Allstate Ins. Co.*, 229 F. Supp. 2d 1016, 1019 (C.D. Cal. 2002) (citing *Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir. 2001)). For purposes of diversity

of citizenship jurisdiction, citizenship is determined by the individual's domicile at the time that the lawsuit is filed. *Armstrong v. Church of Scientology Int'l*, 243 F.3d 546, 546 (9th Cir. 2000) (citing *Lew v. Moss*, 797 F.2d 747, 750 (9th Cir. 1986)). Residence is prima facie evidence of domicile. *See State Farm Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994); *Aledavood v. First Nat'l Ins. Co. of Am.*, No. CV 13-1760-MWF (PJWx), 2013 WL 12133648, at *1–2 (C.D. Cal. May 13, 2013).

Lagunitas has identified at least one proposed class member who, as of the date the Complaint was filed, was domiciled outside California. (Poon Decl. ¶ 5.) Upon information and belief, at the time the Complaint was filed, former employee B.T.D.[1] resided in Wisconsin. (*Id.*) B.T.D previously resided in California and worked for Lagunitas from July 3, 2022 to August 5, 2022, and therefore is a member of the proposed class. (*Id.*) Lagunitas understands that B.T.D. intends to reside in Wisconsin indefinitely. (*Id.*) Accordingly, B.T.D. is domiciled in Wisconsin.

Accordingly, at least one putative class member is diverse for CAFA minimal diversity jurisdiction purposes. As a result, diversity jurisdiction exists under CAFA. 28 U.S.C. § 1332(d)(2)(A) (requiring only "minimal diversity" under which "any member of a class of plaintiffs is a citizen of a State different from any defendant").

### C. The Amount in Controversy Exceeds $5,000,000

Pursuant to CAFA, the claims of the individual members in a putative class action are aggregated to determine if the amount in controversy exceeds $5,000,000, exclusive of interest and costs. 28 U.S.C. § 1332(d)(6). Ondaro may not avoid removal to federal court under CAFA's $5,000,000 amount in controversy requirement by expressly alleging or subsequently stipulating that damages fall below that sum. *See Standard Fire Ins. Co. v. Knowles*, 133 S. Ct. 1345, 1347 (2013). Because here Ondaro has not expressly pled a specific amount of damages, Lagunitas

[1] To protect this former employee's identity and confidentiality, Lagunitas is providing initials only at this stage.

need only show that it is more likely than not that the amount in controversy exceeds $5,000,000. *See Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 788-89 (9th Cir. 2018); *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997).

A removing party seeking to invoke CAFA jurisdiction "need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" within the removing party's notice of removal. *See Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 89 (2014). In the case of a dispute, Lagunitas's burden to establish the amount in controversy is the preponderance of the evidence standard. *See id.; see also Jordan v. Nationstar Mortg., LLC*, 781 F.3d 1178, 1183 (9th Cir. 2015) (citing *Dart Cherokee* for the proposition that there is no anti-removal presumption against CAFA cases). "If a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." Senate Judiciary Report, S. REP. 109–14, at 42 (2005) (citation omitted).

A removing defendant is "not required to comb through its records to identify and calculate the exact frequency of violations." *Oda v. Gucci Am., Inc.,* No. 2:14-CV-07469-SVW, 2015 WL 93335, at *5 (C.D. Cal. Jan. 7, 2015); *see Mackall v. Healthsource Glob. Staffing, Inc.*, No. 16-CV-03810-WHO, 2016 WL 4579099, at *3 (N.D. Cal. Sept. 2, 2016) ("[T]he burden to establish the amount in controversy by a preponderance of the evidence does not require the defendant to 'research, state, and prove the plaintiff's claims for damages.'" (citation omitted)); *Sanchez v. Russell Sigler, Inc.*, No. CV-15-01350-AB (PLAx), 2015 WL 12765359, at *2 (C.D. Cal. Apr. 28, 2015) ("[A] removing defendant is not obligated to research, state, and prove the plaintiff's claims for damages.") (citation omitted); *see also LaCross v. Knight Transp. Inc.*, 775 F.3d 1200, 1203 (9th Cir. 2015) (rejecting plaintiff's argument for remand based on the contention that the class may not be able to prove all amounts

claimed: "Plaintiffs are conflating the amount in controversy with the amount of damages ultimately recoverable"); *Ibarra v. Manheim Invs., Inc.*, 775 F.3d 1193, 1198 n.1 (9th Cir. 2015) (in alleging the amount in controversy, defendants "are not stipulating to damages suffered, but only estimating the damages that are in controversy"). The ultimate inquiry is what amount is put "in controversy" by a plaintiff's complaint, not what a defendant will actually owe. *LaCross*, 775 F.3d at 1202 (explaining that courts are directed "to first look to the complaint in determining the amount in controversy") (citation omitted). Under *Dart Cherokee*, a removing defendant is not required to submit evidence in support of its removal allegations. *Salter v. Quality Carriers, Inc.*, 974 F.3d 959, 963 (9th Cir. 2020); *Craig v. Universum Commc'ns, Inc.*, No. 20-CV-01284-HSG, 2020 WL 4590597, at *3 (N.D. Cal. Aug. 11, 2020) ("Defendant is not required to submit outside evidence[.]").

Although Lagunitas denies Ondaro's factual allegations and denies that he or the putative class he seeks to represent is entitled to any relief, Ondaro's allegations have more likely than not put into controversy an amount that exceeds the $5,000,000 threshold when aggregating the claims of the putative class members as set forth in 28 U.S.C. § 1332(d)(6).[2]

This section addresses each of Ondaro's claims in turn.[3]

---

[2] This Notice of Removal discusses the nature and amount of damages placed at issue by Ondaro's Complaint. Lagunitas' references to potential damage amounts based on Ondaro's allegations are provided solely for establishing that the amount in controversy is more likely than not in excess of the jurisdictional minimum. Lagunitas maintains that each of Ondaro's claims are without merit and that Lagunitas is not liable to Ondaro or any putative class member. In addition, Lagunitas denies that liability or damages can be established on a classwide basis. No statement or reference contained herein shall constitute an admission of liability or a suggestion that Ondaro will or could actually recover any damages based upon the allegations contained in the Complaint or otherwise. "The amount in controversy is simply an estimate of the total amount in dispute, not a prospective assessment of defendant's liability." *Lewis v. Verizon Commcn's, Inc.*, 627 F.3d 395, 400 (9th Cir. 2010).

[3] Given the Complaint's lack of detail and vague allegations, Lagunitas makes certain reasonable assumptions regarding the frequency of alleged California Labor Code

### 1. Failure to Pay Minimum Wages and Straight Time Wages

Under Labor Code section 1194, employers must pay their employees the state minimum wage for all hours worked. Ondaro alleges that Lagunitas "knowingly failed to pay" Ondaro and the putative class "some of, but necessarily all of … all hours they worked." (Compl. ¶ 34.) In fact, Ondaro claimed that some class members "worked through meal periods 'off-the-clock,' and continued to work after they had clocked out for the workday." (*Id.* ¶ 15.) Ondaro also alleges that Lagunitas "would manufacture time keeping records" and that "they worked 'off-the-clock', uncompensated." (*Id.* ¶ 16.)

An allegation of off-the-clock work, during meal periods or otherwise, gives rise to claims for failure to pay minimum wages. *See Brinker Rest. Corp. v. Superior Ct.*, 53 Cal. 4th 1004, 1051 (2012). For the purpose of determining the amount in controversy, courts have held that assuming one hour of unpaid minimum wage per work week is reasonable. *See Kincaid v. Educ. Credit Mgmt. Corp.*, No. 2:21-CV-00863-TLN-JDP, 2022 WL 597158, at *3 (E.D. Cal. Feb. 28, 2022); *see also Kastler v. Oh My Green, Inc.*, No. 19-CV-02411-HSG, 2019 WL 5536198, at *4 (N.D. Cal. Oct. 25, 2019) (One hour of minimum wage per week "is a conservative estimate routinely endorsed by courts in evaluating CAFA's amount in controversy requirement when plaintiff fails to include specific allegations."); *Arias v. Residence Inn by Marriott*, 936 F.3d 920, 925 (9th Cir. 2019) ("An assumption may be reasonable if it is founded on the allegations of the complaint.")

Assuming that the proposed class members were required to work off-the-clock for 10 to 15 minutes during their meal break and after they have clocked out, as Ondaro alleges, for an approximate total of 1 hour per week, Ondaro and the putative class members are potentially entitled to approximately $720,658.40 for

---

violations. *See De Vega v. Baxter Healthcare Corp.*, 507 F. Supp. 3d 1214, 1217 (N.D. Cal. 2019) (endorsing the use of "reasonable assumptions" to determine whether CAFA's amount in controversy requirement is met).

Ondaro's unpaid minimum wage claim (1 hour per week * 46,796 workweeks * $15.40 (average minimum wage in California during class period)). (Poon Decl., ¶¶ 6-7.)

Additionally, according to Labor Code Section 1194.2, an employer that fails to pay an employee the minimum wage shall be subject to liquidated damages in an amount equal to the wages unlawfully unpaid. Based on the assumptions described above, the liquidated damages for Ondaro's unpaid minimum wage claim would be $720,658.40.

Therefore, the total amount-in-controversy for Ondaro's unpaid minimum wage claim is approximately **$1,441,316.80.**

### 2. Failure to Pay Overtime Wages

Labor Code § 510 provides: "Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee." It also provides that "[a]ny work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee." *Id.* "In addition, any work in excess of eight hours on any seventh day of a workweek shall be compensated at the rate of no less than twice the regular rate of pay of an employee." *Id.* The regular rate of pay is a term of art that means all remuneration for employment paid to or on behalf of the employee, except certain statutorily excluded forms of compensation. 29 U.S.C. § 207(e).

Similar to minimum wage claims, courts in the Ninth Circuit have held that one hour of assumed overtime per week is reasonable for the purpose of determining the amount in controversy. *See Hess v. Valero Servs., Inc.*, No. 23-CV-04578-WLH-SK, 2023 WL 5401505, at *3 (C.D. Cal. Aug. 22, 2023) ("assumption of one unpaid hour of overtime per employee per week has been approved by numerous courts in this circuit").

Here, Ondaro alleges that the putative class was not paid for overtime wages. (Compl. ¶ 15.) He alleges that Lagunitas paid the putative class "less than all their work time" and that "[s]ome of this unpaid work should have been paid at the overtime rate." (*Id.*) Assuming that the overtime premium is 0.5 times the average hourly rate of the class, which is $24.47, and not factoring any other remuneration, the overtime premium is approximately $12.24. (Poon Decl. ¶ 9.) Assuming 1 hour of unpaid overtime per workweek, the amount in controversy for this cause of action is $572,783.04 (1 hour OT * $12.24 (assumed average overtime premium) * 46,796 workweeks). (*Id.* ¶¶ 7, 9.)

Therefore, the total amount-in-controversy for the Ondaro's unpaid overtime claim is approximately **$572,783.04.**

### 3. Failure to Provide Required Meal and Rest Periods

If an employer fails to provide employees with meal periods and rest breaks in compliance with California law, the employer must pay a penalty in the amount of an additional hour of pay at the employee's regular rate of compensation for each workday that the meal period or rest break is not provided. If neither a meal period nor a rest break were provided in the same day, the employee is entitled to two hours of pay at the employee's regular rate for that workday. Cal. Lab. Code § 226.7(c); *United Parcel Serv. Wage & Hour Cases*, 196 Cal. App. 4th 57, 69 (2011) (construing "the statute as permitting up to two premium payments per workday—one for failure to provide one or more meal periods, and another for failure to provide one or more rest periods"). This is known as premium pay.

For determining the amount in controversy for meal breaks, "courts in the Ninth Circuit have frequently held a violation rate between 20% and 60% to be reasonable when the plaintiff claims a 'pattern and practice' of violations." *Sanchez v. Abbott Lab'ys*, No. 2:20-CV-01436-TLN-AC, 2021 WL 2679057, at *4 (E.D. Cal. June 30, 2021) (collecting cases); *see Stanley v. Distrib. Alts., Inc.*, No. ED CV 17-2173 AG (KKx), 2017 WL 6209822, at *2 (C.D. Cal. Dec. 7, 2017) (finding that a

violation rate of "three missed rest breaks, and three missed meal breaks per week" is an appropriate assumption where the complaint offered no guidance regarding the frequency of these violations).

Here, Ondaro alleges that Lagunitas failed to provide meal periods and rest periods to the putative class. (Compl. ¶¶ 1, 4.) As alleged in his Complaint, Ondaro claims that Lagunitas "would, at times, manufacture time keeping records to falsely show that Plaintiff and some of, but not necessarily all of, the Class took meal periods when in fact they worked 'off-the-clock,' uncompensated." (*Id.* ¶ 15.) Ondaro goes on to allege that the putative class did not take compliant meal periods, such as taking them before the end of the fifth hour or a second meal period. (*Id.* ¶¶ 16, 52.)

Likewise, Ondaro makes similar allegations as to rest periods. (Compl. ¶17.) Ondaro specifically claims that "some of, but not necessarily all of" the putative class were not able to take a rest period in compliance with California law. (*Id.* ¶¶ 17, 57.)

Assuming a 60% violation rate where the maximum amount of violations for meal and rest break in a workweek is 10 (one meal break and one rest break per day) in a normal 40 hour workweek, the total amount-in-controversy for missed break premiums is approximately $6,870,588.72 (46,796 workweeks * $24.47 average hourly rate of pay for putative class members * 6 hours per pay period in meal and rest penalties). (Poon Decl. ¶¶ 7-8.)

Therefore, the total amount-in-controversy for Ondaro's meal and rest break claims is approximately **$6,870,588.72.**

### 4. Failure to Timely Pay Final Wages at Termination

Ondaro's fifth cause of action seeks waiting time penalties under Labor Code § 203, which provides earned wages that are not timely paid upon termination or resignation continue as a penalty until paid, up to a maximum of 30 days. (Compl. ¶¶ 60-65.) Waiting time penalties are calculated by multiplying the employee's daily wage by the number of days that the employee was not paid, up to a maximum of 30 days. *Id*. The statute of limitations for waiting time penalty claims is three years, and

Ondaro therefore claims waiting time penalties for all employees whose employment ended between September 29, 2022 to present. *See id.*; *see also Pineda v. Bank of Am.*, 50 Cal. 4th 1389, 1398 (2010). The Ninth Circuit has held a defendant may appropriately assume the maximum waiting time penalties (30 days) for the purpose of CAFA removal, observing, "[t]he fact that a very small percentage of employees might possibly not be entitled to the maximum penalty is not an appropriate reason to dismiss altogether Defendant's estimate for this claim." *Jauregui v. Roadrunner Transp. Servs., Inc.*, 28 F.4th 989, 994 (9th Cir. 2022).

Approximately 121 putative class members ended their employment with Lagunitas between September 29, 2022 (three years prior to the filing of the Complaint) and the date of the filing of this Notice. (Poon Decl., ¶ 10.) Based on the average rate of pay for putative class members during the Proposed Class Period and assuming a conservative 50% violation rate, the total waiting time penalties under Labor Code § 203 is approximately $355,304.40 (121 [former employees] * $24.47 [average hourly rate] * 8 hours per day * 30 days * 0.5).

Therefore the total amount-in-controversy for the waiting time penalties claim is approximately **$355,304.40.**

### 5. Failure to Provide Accurate Itemized Wage Statements

Ondaro's sixth cause of action seeks statutory penalties based on allegations that Lagunitas knowingly and intentionally provided inaccurate wage statements. (Compl. ¶¶ 67-73.)

Under Labor Code §§ 226(a) and (e)(1), an employee suffering an injury as a result of such a violation is entitled to recover the greater of all actual damages or $50 per employee for the initial pay period in which a violation occurs and $100 per employee for each violation in a subsequent pay period, not to exceed an aggregate penalty of $4,000. Courts have found that a 100% violation rate for inaccurate wage statements to be appropriate when determining an amount in controversy because it is "reasonable to assume weekly violations for both the meal and rest period claims."

*Serrieh v. Jill Acquisition LLC*, 707 F. Supp. 3d 968, 978 (E.D. Cal., 2023); *see also Cavada v. Inter-Continental Hotels Grp., Inc.*, No. 19-CV-1675-GPC (BLM), 2019 WL 5677846, at *8 (S.D. Cal., Nov. 1, 2019) (concluding "100% violation rate is a reasonable assumption" for a wage statement claim because one missed meal and rest period for each pay period is reasonable); *Ramirez v. HV Glob. Mgmt. Corp.*, No. 21-CV-09955-BLF, 2022 WL 1210402, at *7 (N.D. Cal. Apr. 25, 2022) (finding 25% violation rate reasonable for failure to provide accurate wage statements).

Employees were paid bi-weekly and there are 26 pay periods per year. (Poon Decl. ¶ 11.) Between September 29, 2024 to present, there were approximately 30 pay periods possible, and approximately 168 putative class members working. (*Id.* ¶ 12.) Assuming a conservative 25% violation rate, the amount in controversy for this claim is approximately $123,900.00 ([$50 * 1 pay period * 168 putative class members] + [$100 * 29 pay periods * 168 putative class members, but to a maximum penalty of $4,000 per class member] * .25). Therefore, according to Ondaro's allegations, the total amount in controversy for his wage statement claim is approximately **$123,900.00.**

**6. Failure to Reimburse Employees For Required Business Expenses**

California Labor Code § 2802 requires an employer to reimburse an employee for all necessary expenditures, including reasonable costs, incurred "in direct consequence of the discharge of his or her duties."

Ondaro alleges that Lagunitas "failed to indemnify Plaintiff and some of the Class for these employment-related expenses" and that the "Class paid out-of-pocket for necessary employment-related expenses." (Compl. ¶¶ 20, 21.) Ondaro does not allege any specific details about these expenses, such as cell phone reimbursement.

Assuming that on average the putative class members were under-reimbursed or were not reimbursed by $6.25 per workweek (for a total of approximately $25 per month), the total amount-in-controversy is approximately $292,475.00 (46,796

workweeks * $6.25). Therefore, the total amount-in-controversy for the business expenses claim is approximately **$292,475.00.**

**7. Failure to Produce Requested Employment Records**

Ondaro's eighth cause of action claims that Lagunitas "failed to timely produce the requested employment records, in violation of Labor Code sections 226 and 1198.5" after Ondaro "sent written requests." (Compl. ¶ 22.) Each violation results in $750 in penalties, which is a total of $1,500. *See* Labor Code §§ 226, 1198.5.

Assuming Lagunitas failed to produce wage statements and personnel files to the putative class, and only ten percent of the class ever sent written requests, the amount in controversy would be approximately **$51,600.00** (344 putative class members * $1,500 in penalties * 0.1).

**8. Attorneys' Fees**

Ondaro also seeks his attorneys' fees and costs. (Compl. ¶¶ 41, 49, 65, 73, 78, 86, 87, 104, Prayer for Relief.) Although Lagunitas denies Ondaro's claim for attorneys' fees, for purposes of removal, the Ninth Circuit uses a benchmark rate of twenty-five percent of the potential damages as the amount of attorneys' fees. *Bellinghausen v. Tractor Supply Co.*, 306 F.R.D. 245, 260 (N.D. Cal. 2015) (noting that federal courts have consistently approved of attorney fee awards over the 25% benchmark, specifically at a rate of 30% or higher); *In re Quintus Sec. Litig.*, 148 F. Supp. 2d 967, 973 (N.D. Cal. 2001) (benchmark for attorneys' fees is 25% of the common fund).

The subtotal of the amount in controversy is $9,707,967.96. Therefore, 25% would equal $2,426,991.99 in attorneys' fees.

Accordingly, the amount in controversy based on Complaint's allegations is **$12,134,949.95.**

| CLAIM | AMOUNT-IN-CONTROVERSY |
|---|---|
| Failure to Pay Minimum and Straight Time Wages (Cal. Lab. Code §§ 204, 1194, 1194.2, 1197, and 1197.1) | $1,441,316.80 |
| Failure to Pay Overtime Wages (Cal. Lab. Code §§ 1194 and 1198) | $572,783.04 |
| Meal and Rest Period Violations (Cal. Lab. Code §§ 226.7, 512) | $6,870,588.72 |
| Failure to Timely Pay Final Wages at Termination (Cal. Lab. Code §§ 201-203) | $355,304.40 |
| Failure to Provide Accurate Itemized Wage Statements (Cal. Lab. Code § 226) | $123,900.00 |
| Failure to Indemnify Employees for Expenditures (Cal. Lab. Code § 2802); | $292,475.00 |
| Failure to Produce Requested Employment Records (Cal. Lab. Code §§ 226 and 1198.5 | $51,600.00 |
| Subtotal | $9,707,967.96 |
| Attorneys' Fees at 25% | $2,426,991.99 |
| **TOTAL** | **$12,134,959.95** |

As seen here, the amount of controversy more likely than not exceeds $5,000,000. Based on the foregoing, all requirements for CAFA removal are satisfied here.

## VI. VENUE

"[A]ny civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a). As stated above, Ondaro brought this action in California Superior Court, County of Sonoma. Thus, venue properly lies in the United States District Court for the Northern District of California. 28 U.S.C. §§ 84(a), 1441(a).

## VII. CONCLUSION

Based on the foregoing, Lagunitas requests that this action be removed to this Court. If any question arises as to the propriety of removal of this action, Lagunitas respectfully requests the opportunity to present a brief and oral argument in support of its argument that removal is proper.

Respectfully submitted,

Dated: November 24, 2025

DENTONS US LLP

*/s/ Jemuel Gascon*
Erin F. Norris
Carlos Bacio
Jemuel S. Gascon

Attorneys for Defendant
THE LAGUNITAS BREWING COMPANY